### BLUN v. MAYER et al.

(Supreme Court, Appellate Division, First Department. May. 11, 1906.)

1. PARTNERSHIP—ACCOUNTING.

In accordance with the custom that had existed between two firms in regard to issuing notes for their mutual benefit, the note of J. & Co. was issued for the accommodation of S. & N., it being issued by J. against the protest of M., another member of the firm of J. & Co. There was no understanding or arrangement that it should be charged to J., and though, after it was issued, M. claimed that it should be so issued, J. objected, and it was never charged to him during the existence of such firm of J. & Co., though it was paid by such firm. On the organization of a new firm of J. & Co., the amount to the credit of J. on the books of the old firm was contributed by him with the acquiescence of the other members as his capital in the new firm. *Held*, that J. could not be charged on the liquidation of the affairs of the second firm with the amount of such note.

2. SAME—EXPENSES OF SUIT AFTER DISSOLUTION.

All members of a firm are chargeable with their share of expenses incurred after dissolution of a firm in defending actions commenced against it before such time and continued thereafter.

3. SAME—INTEREST.

Where, on expiration of a partnership, all but one of the partners take over all its property, form a new firm and continue the business, the retiring partner is on an accounting entitled to interest from the time of the dissolution on his share of the property of the firm of which he was a member.

Appeal from Judgment on Report of Referee.

Action by Ferdinand S. M. Blun against Rebecca Mayer and others. From the judgment on the report of the referee, defendants appeal. Modified.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

M. H. Regensburger, for appellants.
Charles Edward Souther, for respondent.

INGRAHAM, J. Upon this appeal from a final judgment the referee to take and state an account of the dealings and transactions defendants ask to review certain interlocutory orders appointing a of the copartnership between the parties to this action. This question is determined by another appeal between the same parties (decided

herewith) 99 N. Y. Supp. 22. The only question that will be considered on this appeal is as to the statement of the accounts between the parties. The copartnership in question was formed by a written agreement dated December 25, 1875, and by it the parties agreed "to contribute to the capital of the firm all moneys standing to their credit on the books of the firm of Jacobs, Strouse & Co. on the 25th day of December, A. D. 1875." It appeared that there was, on the books of the old firm on the 24th day of December, 1875, standing to the credit of Rebecca Mayer, $48,272.71; Solomon L. Jacobs, the original plaintiff in this action, $44,823.55; Abraham Strouse, $21,857.18; and of Max Adler, $26,816.78; and these several amounts were thus contributed by the various parties to this action as their capital of the new firm that commenced business on the 25th day ot December, 1875. Pursuant to said articles of copartnership the new firm took over all the assets and property of the old firm, and continued the business of such old firm until the 25th day of December, 1876, when the new copartnership came to an end by limitation. Upon the books of the new firm when it expired there was credited to the former plaintiff in this action, Solomon L. Jacobs, the sum of $56,-097.34. At the time this new firm expired there was deducted from the amount which appeared to be due to Jacobs $5,568.25, which represented a note which had been made by S. Schiffer & Nephews which the old firm had been compelled to pay, together with the sum of $530.51, the accrued interest thereon. After the termination of this second copartnership, the business was continued by the defendants under the firm name of "Mayer, Strouse & Co." Jacobs, the former plaintiff in this action having no interest therein, and these defendants thus took possession of and became possessed of all the stock of goods, machinery, appliances, books of account, good will, and other assets belonging to the second copartnership of Jacobs, Strouse & Co., and used and employed the same for the purposes, and in the prosecution of their business. Under the copartnership agreement Jacobs was entitled to 30 per cent. of the net profits of the business, and this 30 per cent. of such profits has been credited to his account which produced the balance in his favor upon the books of the copartnership.

The first question presented is whether the defendants were justified in charging to Jacobs' account the amount of this note made by S. Schiffer & Nephews, and the accrued interest thereon. The referee found that:

"The said note and interest, together amounting to $6,098.80, were not an indebtedness or liability of the said Jacobs, nor was he personally liable to the copartnership therefor, nor was either the said note or the said interest properly chargeable to his personal account; but the loss of the said note and interest was a loss of the copartnership and properly chargeable against the several copartners proportionately, as provided in the copartnership agreement. Therefore, the said Jacobs should have had to his credit on the 24th of December, 1876, the sum of $62;196.14, subject to be reduced by his proportionate share of said note and interest."

With this conclusion of the referee we concur. It seems that this Schiffer note was dated April 20, 1875. This was during the existence of the first firm and prior to the organization of the second firm.

It became due on August 20, 1875, and was then paid by the first firm. It would seem that this was one of four accommodation notes that had been given by the first copartnership for the accommodation of Schiffer & Nephews, the aggregate amount being $18,743.35; that the first firm and S. Schiffer & Nephews had "exchanged notes for mutual interests," with the firm of Jacobs, Strouse & Co. receiving Schiffer & Co.'s notes for its accommodation, and Schiffer & Co. receiving notes of Jacobs, Strouse & Co. for its accommodation. The firm of S. Schiffer & Nephews failed in 1875, and these notes which had been given by the first firm for the accommodation of Schiffer & Nephews' firm were subsequently paid by the first firm and charged to the account of Schiffer & Nephews. One of the defendants who was a bookkeeper of the first firm testified:

"They (S. Schiffer & Nephews) asked for as much accommodation as we asked of them. I know that, because for their own advantage we gave them what they asked for and they gave us what we asked for, and for every note which they wanted we took one from them."

When this note was given, Jacobs, the original plaintiff, came to the bookkeeper and requested him to make out a notice for that amount. The bookkeeper testified that he told Jacobs:

"Uncle Leopold, you know you and Uncle Alec agreed not to give the Schiffers any more notes. Whereupon he said to me: 'Well, I can't help myself. I must give it to them."

That the uncle Alec referred to was Alexander J. Mayer. Alexander J. Mayer was called as a witness and testified that after this note was given, the bookkeeper called his attention to it, and said that it had been issued by direction of Mr. Jacobs; that on the following day he saw Jacobs and told him that that note would not be issued for account of the firm: that it had to be his own individual matter; that Jacobs said that he knew the witness had previously objected to it, but he repeated the story that he had told to the bookkeeper; that when the note matured, Schiffer & Nephews having failed, the witness asked Jacobs what was to be done about charging up that note; that the witness said that it was to be charged to him, but Jacobs said:

"No, don't charge it to me, keep it in the name of the firm on account of his personal relations with his brother-in-law, the elder Mr. Schiffer; that he preferred to have it that way."

That was all that appeared to have been said about that note during the continuance of that copartnership. In the month of December, 1895, the first firm being about to expire, Jacobs had an interview with the witness, and said he wanted the copartnership continued, and asked the witness if he could not succeed in inducing Mr. Strouse and Mr. Adler to continue it; that the witness told Jacobs that the relation between him and Mr. Strouse was so bitter that he could not tell, but that he would try and see what could be done. The witness then said:

"You know that that Schiffer note is there and that wants to be settled."

Jacobs said:

"Yes, I know but it is all right, Schiffer has a great deal of property in the city here, and it will come out all right, and besides that I have some property belonging to Schiffer standing in my name."

They then spoke about the control of the business and Jacobs said he would be satisfied to leave everything in the witness' hands; that the witness could decide at the end of the year anything that came up, and that he would be guided by it; and it was in pursuance of that arrangement that the copartnership agreement in the firm No. 2 was executed.

This is the only evidence in relation to this note. It was issued in accordance with the custom that had existed between these two firms in regard to issuing notes for their mutual accommodation. It was issued by one member of the firm against the protest of Alexander J. Mayer who it appeared represented his wife, a member of the firm, but it was still a firm obligation, and there was no understanding or arrangement by which it was to be charged to Jacobs. After it had been issued Alexander J. Mayer claimed that it should be. Jacobs objected, and it was never charged to him during the existence of the firm. When the new firm was organized the amount to the credit of Jacobs was contributed by him as his capital to the new firm, and that amount was fixed without charging against him the Schiffer & Nephews' note, and so continued during the continuance of the second firm. If there was any question about the right of the parties to have this Schiffer note charged to Jacobs personally, that question should have been settled before the commencement of the new firm; and all the parties to the firm having acquiesced in the contribution by Jacobs of the amount to his credit in the old firm as his capital in the new firm, there was no justification for charging him with the amount of this note upon the liquidation of the affairs of the second firm.

The defendants also claim that the referee erred in refusing to charge Jacobs with his proportion of certain payments made between April 24, 1877, and December 30, 1879, amounting to $3,656.70. These amounts appear in schedule A. annexed to the referee's report. From the way these amounts are entered, it is almost impossible to ascertain the purpose for which these payments were made, and I cannot find that the testimony explains them. Nor can I find any evidence in the record that the amounts entered in this account were actually paid by any one. It was proved, however, that all of the merchandise of Jacobs, Strouse, & Co. No. 2 went over to Mayer, Strouse & Co. at an agreed price, and that there was also taken over all the machinery of Jacobs, Strouse & Co. No. 2, together with the building at New Haven, which were used by that firm. I think that on this testimony as it stands the referee was justified in refusing to charge against the plaintiff the balance appearing in this account. In stating the accounts, however, it is quite clear that the referee allowed to the defendants certain of the payments which appear in this schedule. Thus in Schedule A. there are charges for insurance paid to Klienberger. The referee charges against the defendants the balance of Jacobs' share of the proceeds of the Klienberger policy, after deducting premiums and disbursements set forth in Schedule D., amounting to $1,175. Schedule D. does not seem to be printed as a part of the record, but from this entry it would appear that the premiums paid upon this policy had been deducted from the amount received, and thus, the

items in Schedule A. for Kleinberger's policy had been allowed. By the eleventh finding of fact the referee charges the plaintiff with the depreciation in the value of the factory building at New Haven owned by Jacobs, Strouse & Co., whereby the said firm sustained a loss of $6,172.80, of which 30 per cent. was properly chargeable to said Jacobs. The rent for this property was not chargeable to Jacobs as the succeeding firm took the property and used it. He also charged to Jacobs his proportionate amount of the note of Schiffer & Nephews, having before credited him with the amount of that note which had been improperly charged against Jacobs.

The only other question, so far as I can ascertain, is as to the various amounts paid after the dissolution of the second firm for legal expenses. It appeared that prior to the dissolution of the first firm there were two suits pending against it—one, by Thompson, Langdon & Co., and one by Waterman—for alleged infringements of patents by the firm of Jacobs, Strouse & Co. No. 1. These actions continued after the dissolution of the second firm, and the charges appearing upon the accounts as paid to Starr & Ruggles were for legal services rendered in those actions. There are also items of payments on account of a "Tempering suit." This seems to be the Waterman action above referred to. The total amount charged in these accounts for the payments would seems to be $5,374.52, but there is a credit in this account of settlement of Steel suits which apparently refers to the same action, of $2,056.75, leaving a balance paid on account of these actions of $3,317.77, of which the plaintiff should be charged with 30 per cent. which would be $995.33. So far as can be ascertained from this evidence, these are the only items which appear in the Schedule A. annexed to the referee's report for which the plaintiff should be charged, but with which he has not been charged by the referee.

The next question presented is as to the allowance of interest, the referee having charged against the defendants interest on the balance due by them from the termination of the second firm until the date of his report. I think, under the circumstances, that the defendants are liable for interest. The question as to whether interest should or should not be allowed is discussed in Johnson v. Hartshorne, 52 N. Y. 173, where the court say:

"There is and can be no fixed rule in settling partnership accounts in respect to interest. Its allowance must necessarily depend upon the circumstances of each case. Ordinarily, interest is not allowed after dissolution upon capital as such, although by the articles it is allowed during the partnership. * * * The reason for this general rule is obvious. During the partnership all the partners have the benefit of the capital to make profits, while upon dissolution this benefit ceased. But where the surviving partner unreasonably delays the payment of the capital, interest will be allowed. * * * So it has been held that the period of dissolution is the proper time to make a rest and adjust the balance of the partnership account, and the partner against whom the balance is found is chargeable with interest. * * * The circumstances that the surviving partner has charge of the books and knows the state of the accounts has been regarded as sufficient to charge him with interest. * * * So whether or not the surviving partner has used the money in violation of his duty, or made profits on it, and other circumstances of good or bad faith having a bearing upon the question of interest."

In this case, it appears that all the property of the copartnership was taken over by the defendants who formed a new copartnership and continued the business. The plaintiff's interest, therefore, in the copartnership that had expired was taken over and used by the remaining partners in the conduct of the new business which they conducted; and it seems to me inequitable to allow these partners to take the plaintiff's interest in the copartnership of which he was a member and use it to continue the business for their own benefit, and not charge them with interest on the plaintiff's capital invested in the copartnership and which was not paid to him.

My conclusion is that the referee was justified in charging the defendants with interest upon the amount due to Jacobs, the original plaintiff in this action, and the only respect in which there should be a modification of this judgment is that there should be deducted from the amount of $30,988.25 found due by the referee, the sum of $995.33, the amount paid for defending the actions which with interest thereon from June 1, 1876, to April 20, 1905, amounts to $2,750.55, leaving the amount due to the plaintiff from the defendants $28,267.70, and the judgment as thus modified, should be affirmed, without costs of this appeal. All concur.